## Katherine A. Murtaugh, Appellee, v. Chicago Motor Coach Company, Appellant.

### Gen. No. 36,281.

Opinion filed February 6, 1933.

WALTER N. MURRAY and JOHN E. KEHOE, for appellant.

LEWIS C. MURTAUGH, for appellee.

MR. PRESIDING JUSTICE McSURELY delivered the opinion of the court.

Plaintiff brought suit claiming damages caused by the negligent operation of one of defendant's coaches in running into and destroying trees near an apartment building in Chicago owned by her. Upon trial by

the court she had judgment for $200, from which defendant appeals.

Plaintiff testified as to her ownership of the apartment building at the corner of Marshfield avenue and Jonquil terrace; her building extends along Jonquil terrace about 125 feet, with a southern exposure; in the parkway between the sidewalk and the curb are several very large trees—Lombardy poplars, with branches extending about six feet over the roof of plaintiff's building. Plaintiff saw one of the busses of defendant going west on Jonquil terrace turn up over the curb and at great speed run into one of the large trees in the parkway, bending it over and breaking off the top half, which contained all the branches; this fell against the next tree to the west, knocking off all its branches on the side. The defendant, after the accident, removed its coach but did not remove the branches and trunk of the tree which were left hanging. Plaintiff testified that the destruction of the tree left an unsightly gap and the tenants have complained about the appearance; that the tree when standing was a valuable protection from the hot midday sun to the windows exposed on the south on Jonquil terrace; the tree that was completely destroyed shaded the windows of the dining rooms of three of the apartments; the trees were not on plaintiff's property but were in the parkway. Another witness testified that the trees afforded "a park-like outlook to the rooms adjoining," and gave shade and protection to the south side of the building. It took two men two half days to remove the debris; plaintiff's husband and another man did the work.

Defendant says that the fee of public streets is in the city and that shade trees in such streets are the property of the municipality, and therefore an abutting property owner has no right of action for damages to the trees. There is no doubt but that between

the municipality and the abutting property owner the municipality has the control of the street, with any trees therein. Such cases are *Baker v. Town of Normal*, 81 Ill. 108, and *City of Mt. Carmel v. Shaw*, 155 Ill. 37. But this is not a question between the city and the owner of the lot adjoining the street. Plaintiff is complaining of the negligence of the Motor Coach Company, a third party. Such a case was under consideration in *Rockford Gas Light & Coke Co. v. Ernst*, 68 Ill. App. 300, where the plaintiff recovered damages for injuries to trees growing upon the street fronting her lot caused by escaping gas from a break in the gas company's street main. The court said:

"We do not agree with counsel for appellant, that appellee could not recover damages for the destruction of the two elm trees, planted by her nineteen years before, in the street immediately in front of her premises. While it is true she could have no property in, or control of, the trees as against the municipality, yet as against third persons negligently injuring or destroying them, she may recover."

In *Donahue v. Keystone Gas Co.*, 181 N. Y. 313, there was injury to trees through escaping gas from defendant's pipes in the soil. It was claimed that plaintiff, having no legal interest in the trees because he did not even own the land upon which they stood, could not maintain an action against the gas company for damages. The court considers the question at considerable length. It held that the gas company was liable, and in the opinion used these pertinent words:

"The shade trees of our cities and villages are the pride of the people. On many streets they add largely to the commercial value of land. Is the law so tender toward wrongdoers as to virtually say to them, 'If you cut down every graceful elm or beautiful maple standing in the streets of any city and can adjust matters with the authorities, you are safe, for no indi-

vidual can call you to account, even if twenty per cent is taken from the value of his property?' The announcement of such a rule, directly or indirectly, would spread consternation throughout the state."

In *Skinner v. Buchanan,* 101 Vt. 159, the trees were cut down by Buchanan, tree warden of the village. The court held that the warden in so doing was not acting within the scope of his official duties and authority, and that plaintiff had a right to recover damages, saying in the opinion:

"Why allow damages for the obstruction of light and air and not for the destruction of ornamental shade trees? Or, why allow damages for unnecessary interference with lateral support, which usually consists of merely removing the soil that supports abutting soil, and withhold them for the unnecessary removal of trees which grow above the soil, and enhance the value of abutting property perhaps as much as does its lateral support?"

In *Norman Milling & Grain Co. v. Bethurem,* 41 Okla. 735, after considering a long list of reported decisions on the instant point, the court concluded that:

"An abutting lot owner, even though the fee of the street and general ownership of the trees be in the city, has, without the aid of statute, an equitable easement, and therefore a special ownership, in the trees which will enable him to maintain an action for wrongful injury thereto which depreciates the value of his lot." To the same effect is *Robbins v. Hartford City Gas Light Co.,* 82 Conn. 394. See also 13 R. C. L. 209.

These cases express our opinion upon the point presented. In *Aldis v. Union Elevated R. Co.,* 203 Ill. 567, it was held that the property owners adjacent to a street retain the right of action and the right to enjoy "the air and light which pass over said streets, the view and the comfortable and safe enjoyment of their

property.'' If these rights are destroyed, thereby damaging the adjacent property, it would seem too clear for argument that the owner may recover compensation for such damages.

The testimony on behalf of plaintiff clearly shows that the destruction of the trees which afforded shade to her property caused damages for which she may recover. This being a fourth class case, no pleadings were necessary. However, plaintiff alleged and proved special damages.

The Chicago ordinance quoted by defendant, Article 6, section 793, fixes only the rights between the municipality and a gas company whose leaking mains damage or kill trees in the streets. It does not and could not affect the rights of the adjacent property owner to recover damages to his special easement.

The last point made by defendant is that the amount assessed as damages is excessive. The witness testifying on behalf of plaintiff gave his opinion that the replacement value of such a tree was from $375 to $400. Defendant introduced a witness who said the cost of the replacement would amount to about $72. While there might be some question as to whether this was the proper method of proving damages, yet both plaintiff and defendant followed this method without objection on either side. The finding of the trial court, assessing the damages at $200, was within the scope of the testimony.

We see no reason to disturb the judgment and it is affirmed.

*Affirmed.*

MATCHETT and O'CONNOR, JJ., concur.